UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL DIVISION

CASE NO.: 24-cv-21477-JB

MS LEISURE CORPORATION, a
Florida corporation,

    Plaintiff,

v.

MIAMI-DADE COUNTY, FLORIDA, a
political subdivision of the State of Florida.

    Defendant.                                    /

**MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, MS Leisure Corporation ("MS Leisure"), moves for an Order of this Court *restraining* Defendant, Miami-Dade County, FL (the "County"), from:

(i)     "taking, possessing, acquiring, selling, carrying, or transporting" any protected animal at the Miami Seaquarium;

(ii)     evicting or ejecting MS Leisure from the Miami Seaquarium; or

(iii)     arbitrarily closing the Miami Seaquarium;

unless and until it receives permission from the Court *and* all appropriate federal agencies. In support thereof, MS Leisure states the following:

**FACTS**

MS Leisure operates a marine life park commonly known as the Miami Seaquarium (the "Seaquarium"), which currently houses over 1,000 animals, mammals, birds, fish, and invertebrates. [D.E. 1, ¶ 22]. The Seaquarium sits on 38 acres of oceanfront land owned by the

County and is located between the City of Miami and Key Biscayne. [D.E. 1, ¶¶ 8, 9]. The Seaquarium opened in 1955 and has been in continuous operation since then. [D.E. 1, ¶ 10]. Over the years, the County entered into several long-term lease agreements with operators of the Seaquarium. [D.E. 1, ¶¶ 12-14].

In March of 2022, the County assigned the land use agreement to MS Leisure. [D.E. 1, ¶ 58]. Before doing so, the County performed a due diligence check on MS Leisure. [D.E. 1, ¶ 56]. The County specifically found that MS Leisure, through its parent company, The Dolphin Company, has extensive expertise in the operation of zoos and aquariums throughout the world and is accredited by several agencies, including the Association of Zoos & Aquariums. [D.E. 1, ¶ 57]; see also **Exhibit "A"** – County Resolution Number R991-21. The County also found that MS Leisure has a proven track record of achieving the highest certification levels for its facilities. *Id*.

Prior to finalizing the lease, MS Leisure was also required to secure a Class C exhibitor's license from the United States Department of Agriculture ("USDA"), which is no small task. [D.E. 1, ¶ 57]. The USDA only issues a Class C license after an extensive pre-licensing inspection and demonstrated understanding of the Animal Welfare Act ("AWA") and its own regulations. [D.E. 1, ¶ 24]. Marine life parks are heavily regulated by several federal entities and statutes, including the AWA, USDA, and the U.S. Fish and Wildlife Service ("FWS"). [D.E. 1, ¶¶ 23-29]. Moreover, many animals at the Seaquarium were (and still are) regulated by other federal statutes, such as the Endangered Species Act ("ESA"), 16 U.S.C. § 1538-1544, and the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. § 703-712.[1] *Id*. Therefore, in order to secure a

---

[1] The Seaquarium currently houses 14 animals that are classified as "endangered" or "threatened" under the ESA and over 25 American Flamingos that are protected under the MBTA. [D.E. 1, pp. 41, 42, 49]. Under the ESA, it is illegal to "take, possess, sell, deliver, carry, transport or

2

license to operate the Seaquarium, MS Leisure needed to comply with a plethora of federal statutes and regulations and had to seek permission from several federal agencies, in addition to the permitting and licensing requirements of the State of Florida. Currently, MS Leisure is the only entity licensed by any federal agency to operate the Seaquarium and care for the animal housed therein. [D.E. 1, ¶ 23].

When MS Leisure began operating the Seaquarium, the County was incredibly pleased with their relationship and MS Leisure's financial investment in the Seaquarium. [D.E. 1, ¶ 87]. The County's Mayor and the CEO of The Dolphin Company, MS Leisure's parent company, even attended a press conference together and announced their collaborative effort with a non-profit conservation group to care for a whale located on the premises. [D.E. 1, ¶¶ 88, 89]. The Mayor publicly praised MS Leisure for its "increased trust and transparency." [D.E. 1, ¶ 96]. The parties met on a weekly basis from June 2023 to December 2023, to address any concerns about the Seaquarium. [D.E. 1, ¶ 97]. During those meetings, no one from the County ever expressed concerns to MS Leisure about the care of animals or any alleged code violations. [D.E. 1, ¶ 99].

The County's relationship with MS Leisure changed in December 2023, when The Dolphin Company's CEO responded to an email sent by a high-ranking county official, where the CEO criticized the County. [D.E. 1, ¶ 104]. The day after the CEO's email, the County weaponized its code enforcement staff and issued MS Leisure over 40 code violations. [D.E. 1,

---

ship" endangered or threatened animals without first obtaining a permit and license. 16 U.S.C. § 1538(a). The MBTA, much like the ESA, requires a special permit from U.S. Fish and Wildlife Service before any person or entity can lawfully "take, salvage, otherwise acquire, transport, or possess migratory birds." 50 C.F.R. § 21.95. The ESA and MBTA prohibit such acts because significant habitat modification can significantly impair essential behavioral patterns, including breeding, feeding or sheltering.

¶¶ 109, 110]. MS Leisure was shocked because all of the violations were present before the County approved MS Leisure's lease assignment, and, in less than two years, MS Leisure had spent over $1,000,000.00 on structural upgrades to the Seaquarium. [D.E. 1, ¶ 111].

MS Leisure offered to meet several times, but the County ignored their requests. [D.E. 1, ¶¶ 124-131]. On March 7, 2024, Miami-Dade County sent a letter entitled *Notice of Termination of Lease Agreement* to MS Leisure, demanding that MS Leisure surrender possession of the Seaquarium to the County no later than Sunday, April 21, 2024. [D.E. 1, ¶ 131, 133]. The County claimed that MS Leisure violated the current lease agreement by failing to comply with USDA regulations and the Miami-Dade County Building Code. [D.E. 1, ¶ 132]. MS Leisure was deeply concerned about the County's brash decision because the County's letter was devoid of *any plan* regarding the care of animals, which was supposedly the basis for eviction.

MS Leisure responded on Monday, March 11, 2024, explaining that, "Upon thorough internal review and consultation with independent third-party experts, we have found substantial evidence that contradicts the claims made in [the termination letter]." [D.E. 1, ¶ 134]. MS Leisure meticulously explained all the inaccuracies in the County's letter. *Id*. MS Leisure also took corrective actions to resolve any concerns raised by the County, even if it did not agree with the County's assessment. [D.E. 1, ¶ 119]. Of the 40 plus code violations, MS Leisure corrected all of the violations that did not require a massive overhaul. [D.E. 1, ¶ 119]. More complex violations, however, such as the demolition of buildings, would obviously take more time. [D.E. 1, ¶ 121]. MS Leisure offered to discuss the matter further with the County to amicably resolve any remaining issues. However, the County refused to reconsider its position. [D.E. 1, ¶ 135].

On March 14, 2024, MS Leisure's counsel even reached out to the County Attorney's Office ("CAO") to resolve the issues. [D.E. 1, ¶ 136]. On April 5, 2024,[2] MS Leisure's counsel met with the CAO and presented a slide-show presentation, outlining the errors in the County's position. [D.E. 1, ¶ 137]; see also **Exhibit "B"** – Slideshow Presentation to Miami-Dade County. During the meeting, MS Leisure's counsel requested a follow-up meeting between executives from MS Leisure, The Dolphin Company, and the County's decision makers. The CAO told MS Leisure that it (the County) would let MS Leisure know if their decision makers would agree to meet. Since he did not receive a response, on April 9, 2024, MS Leisure's counsel reached out again to the CAO to coordinate a meeting. That same day, the CAO told MS Leisure's counsel that its decision makers refused to meet. [D.E. 1, ¶ 137]. The CAO reconfirmed the County's expectation for MS Leisure to vacate the premises by Sunday, April 21, 2024. [D.E. 1, ¶ 138]. On April 15, 2024, MS Leisure's counsel reached out to the CAO again to resolve this issue, but the CAO's did not respond.

Accordingly, on April 19, 2024, MS Leisure filed the Complaint in this action seeking, *inter alia*, protection for the animals under the ESA and MBTA, including injunctive and declaratory relief. [D.E. 1]. MS Leisure argued that ejecting the company from the Seaquarium, without any plan for the animals, would violate federal law.[3] MS Leisure specifically noted that it houses "endangered" species that are protected under the ESA and American Flamingos that are protected under the MBTA. [D.E. 1, pp. 41, 42, 49]. MS Leisure asserted that, under the ESA and MBTA, it is illegal to take, possess, sell, deliver, carry, transport or ship endangered

---

[2] The attorneys agreed to meet on March 22, 2024, but the meeting was postponed until April 5, 2024, for various reasons.
[3] Additionally, moving animals without permission could also compromise other animals that do not have federal protections, by creating undue stress and harm from transportation, splitting of compatible groups, and unfamiliar habitats and caregivers.

5

animals, threatened animals, or migratory birds without first obtaining a permit and license from the USDA or U.S. Fish and Wildlife Service.

After filing the Complaint, MS Leisure emailed a copy to the County and stated that it would be seeking a Temporary Restraining Order, precluding the County from ejecting MS Leisure from the premises on April 21, 2024. The County informed MS Leisure that it would not seek self-help remedies. In response, MS Leisure agreed to refrain from filing a Rule 65 motion for the moment, but would revisit the matter depending on the County's next action.

On April 22, 2024, the County's next action was to serve MS Leisure with a *Notice of Eviction*. See **Exhibit "C"** – Notice of Eviction. In the eviction notice, the County stated, "Due to Lessee's failure and refusal to surrender and deliver possession of the Property in a timely manner, Lessor hereby provides notice of its intention to *promptly pursue* an eviction action to remove Tenant from the Property." MS Leisure was extremely concerned because state law does not place time restrictions on the speed in which a *commercial* lessor can move for eviction, nor any time restrictions on an order requiring the lessee to vacate the premises. In other words, when a commercial lessor files an eviction complaint, a state court judge could expediate the hearing, grant the eviction, and permit the lessor to eject the lessee almost immediately – even without a plan for endangered animals, which is the case here. Moreover, the County's *Notice of Eviction* was void of any plans for the animals. Based on the County's intention to "promptly purse an eviction action to remove MS Leisure," this motion follows.

## MEMORANDUM OF LAW

This circuit considers four factors in determining whether to grant a preliminary injunction; the movant must show: 1) a substantial likelihood of success on the merits of the case; 2) that movant will suffer irreparable harm if the injunction is denied; 3) that the injury to

the movant from the denial of injunctive relief outweighs the damage to the opposing party if it is granted; and 4) that the injunction will not harm the public interest. *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1518 (11th Cir. 1993); citing *United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983). No one factor is determinative, rather "[t]hese factors interrelate on a sliding scale and must be balanced against each other." *Serono Laboratories, Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C.Cir.1998). As explained below, MS Leisure has satisfied the requirements for this Court to issue a preliminary injunction and preclude the County from removing MS Leisure from the Seaquarium.

***Likelihood of Success on Merits***

To meet the "substantial likelihood of success on the merits" requirement for a temporary restraining order, a movant must show a substantial likelihood of success, not certainty. *eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.*, 519 F. Supp. 3d 1129, 1133 (S.D. Fla. 2021); *Whole Woman's Health v. Paxton*, 264 F. Supp. 3d 813, 823 (W.D. Tex. 2017). In the Complaint, the MS Leisure sought protection of the animals at the Seaquarium under the Endangered Species Act ("ESA"), 16 U.S.C. § 1538-1544, and the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. § 703-712.

Under the ESA, it is illegal to "take, possess, sell, deliver, carry, transport or ship" endangered or threatened animals without first obtaining a permit and license. 16 U.S.C. § 1538(a). The MBTA, much like the ESA, requires a special permit from U.S. Fish and Wildlife Service before any person or entity can lawfully "take, salvage, otherwise acquire, transport, or possess migratory birds." 50 C.F.R. § 21.95. The ESA and MBTA prohibit such acts because habitat modification can significantly impair essential behavioral patterns, including breeding, feeding or sheltering. Furthermore, acclimating animals to new habitats, routines, and

7

*caregivers*, introduces stress and uncertainty into animals' lives, which can greatly impact their health and well-being. This can be particularly true for animals that are not acclimated to transport procedures (such as entering crates or travel enclosures), have health issues, are of advanced age, or are in the midst of a reproductive or mating cycle.

MS Leisure is the only entity currently licensed by the USDA to possess or care for any of the animals at the Seaquarium. Nevertheless, the County seeks to "promptly" remove MS Leisure from the Seaquarium, which will in turn cause the County (or some other unidentified individual or entity) to "take, possess, or acquire" animals that are protected under the ESA and MBTA. The County has neither sought nor secured the requisite permits or licenses from the USDA, FWS, or any other agency. MS Leisure is also unaware of any entity securing a permit to take, possess, carry, transfer, or transport any of the animals at the Seaquarium pursuant to the ESA or MBTA. If the County ejects MS Leisure from the property, without a plan for the safety and well-being of the animals, then it would undoubtedly violate federal law. MS Leisure has clearly established its likelihood of success on the merits.

**Irreparable Harm**

Irreparable harm in the context of an injunction is a type of injury that cannot be reversed or compensated for through legal remedies such as monetary damages. *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1309 (S.D. Fla. 2008). Courts have routinely found that injuries to animals amount to irreparable harm. See *Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 220–21 (D.D.C. 2003); citing *Fund for Animals v. Clark,* 27 F.Supp.2d 8, 14 (D.D.C.1998) (preliminary injunction granted based on the irreparable harm caused by defendants' failure to comply with NEPA) *Sierra Club v. Martin,* 933 F.Supp. 1559, 1570–71 (N.D.Ga.1996) (finding irreparable harm in MBTA/APA action, noting that "the question of irreparable injury does not

focus on the significance of the injury, but rather, whether the injury, irrespective of its gravity, is *irreparable...*"); *Fund for Animals v. Espy,* 814 F.Supp. 142, 151 (D.D.C. 1993)(injunction granted based on irreparable harm where a program would have removed 10 to 60 bison from the same bison herd). A proponent of a preliminary injunction seeking to prevent irreparable harm to animals, especially members of a threatened or endangered species, need not show irreparable harm to the species as a whole. *Fund For Animals v. Norton*, 281 F. Supp. 2d 209, 220–21 (D.D.C. 2003).

      Here, the County is seeking to eject MS Leisure from the Seaquarium without any plan to care for the animals. The County will cause irreparable harm in the process because many of the animals at the Seaquarium are "endangered," "threatened," fragile, or protected. Relocating the animals could significantly disrupt their familiar routines, habitats and caregivers, causing stress, harm, injury or even death. No amount of money can return these animals or compensate the animals or MS Leisure for this harm. If the County is allowed to evict MS Leisure from the premises without a delineated plan for the animals, then the animals can and will undoubtedly suffer and even perish.[4] Abruptly closing the Seaquarium is clearly deleterious to the animals' health and welfare and potentially fatal for the animals.

***The injury to MS Leisure far outweighs the damage to the County.***

      MS Leisure cares for thousands of animals and mammals at the Seaquarium – many of which are "endangered," "threatened," or protected under federal law. As stated above, if the

---

[4] MS Leisure employs over 200 trained professionals to operate the Seaquarium. The County has not implemented a training program to hire people who are qualified to care for the animals. The County has not hired a single employee that is qualified to replace the Seaquarium's staff. And even if the County miraculously finds 200 people and trains them, it is extremely dangerous for the animals to undergo such a drastic transition. Animal welfare laws recognize that acclimating animals to "new habitats, routines and **caregivers**" introduces stress and uncertainty into animals' lives that can greatly impact their health and well-being.

County evicts the Seaquarium from the land, without a plan, the animals will needlessly suffer harm or even death.  The damage cannot be undone.  Conversely, the County wants to retrieve 38 acres of land that it owns, but has not used since 1954.  The County is also receiving $1,000,000.00 in annual rent from MS Leisure.  The injury to MS Leisure far outweighs any damage to the County.  The comparison is not even close.

*The Public's Interest*

When a court determines whether an injunction will harm the public's interest, it analyzes any adverse impact on the general public if the injunction is granted.  See e.g. *Intec, Inc. v. Monster Cable Prod., Inc.*, No. 10-22772-CIV, 2011 WL 13223537, at *3 (S.D. Fla. Sept. 6, 2011).  Granting an injunction to enforce the law can be deemed to be in the public's interest. *See e.g. Gov't Emps. Ins. Co. v. Barakat*, No. 22CV07532NGGRML, 2024 WL 22769, at *7 (E.D.N.Y. Jan. 2, 2024).

Here, the Seaquarium has been a beacon of marine-life conservation, education, and entertainment for almost 70 years.  The iconic marine life park has captured the hearts of visitors from around the world, offering a unique glimpse into the wonders of the sea.  In the 1970's, the Seaquarium was the home of the popular television show Flipper and has hosted a plethora of movie and television films – creating a unique bond between dolphins and humans.  The Seaquarium has also been committed to promoting marine conservation and education. The Seaquarium's team of dedicated experts, including marine biologists and animal trainers, work tirelessly to provide visitors with informative and engaging experiences. Through educational shows, interactive exhibits, and conservation programs, the Seaquarium inspires guests of all ages to learn more about the ocean and its fascinating inhabitants.  The Seaquarium provides a

service to the public by educating people on marine life habitats and conservation. Granting an injunction will actually assist the public, not harm it.

Furthermore, granting an injunction will prevent a violation of federal law. As stated above, the County will violate a plethora of federal statutes, regulations, and laws if it ejects MS Leisure from the premises and "takes" the animals housed therein. Accordingly, MS Leisure has satisfied the public interest prong of injunctive relief.

For the reasons stated above, MS Leisure respectfully requests that this Honorable Court enter an Order granting its *Motion for Temporary Restraining Order*, precluding the County from: (i) "taking" or causing any individual or entity to "take" any protected animal from the Miami Seaquarium without permission from the applicable federal agencies and this Court; (ii) closing the Seaquarium without permission from the applicable federal agencies and this Court; or (iii) evicting or ejecting MS Leisure from the Seaquarium without permission from the applicable federal agencies and this Court.

Respectfully submitted,

Hilton Napoleon, II, P.A.
Hilton Napoleon, II, Esq., FBN 17593
237 South Dixie Hwy., 4th Floor
Coral Gables, Florida 33133
Telephone: 305-510-7106
hilton@napoleonfirm.com
hiltonnapoleoniipa@gmail.com

*Counsel for the Plaintiff, MS Leisure Corp.*

By: /s/ *Hilton Napoleon, II*
      Hilton Napoleon, II

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of April 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which served the parties who are currently on the list to receive e-mail notice/service for this case, and that I served all counsel or parties who are not authorized to receive electronically Notices of Electronic Filing in some other authorized manner, if applicable.

By: */s/ Hilton Napoleon, II*
Hilton Napoleon, II