UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-21477-JB

**MS LEISURE CORPORATION,**
a Florida corporation,

      **Plaintiff,**

v.

**MIAMI-DADE COUNTY,**
a political subdivision of the State of Florida,

      **Defendant.**
_____/

## **DEFENDANT MIAMI DADE COUNTY'S MOTION TO DISMISS COMPLAINT**

Defendant Miami-Dade County, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves this Court for entry of an order dismissing Plaintiff's Complaint (the "Complaint"), and as grounds states:

**I.     INTRODUCTION**

This is a dispute between a landlord, Miami-Dade County (the "County"), and its tenant, MS Leisure Corporation ("Plaintiff"). The County contends that Plaintiff is in breach of its lease and has accordingly terminated the lease. As self-help is not available in Florida, the County will, shortly, be filing an eviction action in Florida state court to perfect its claim to take back the leasehold. Rather than simply defending against that eviction proceeding in state court, Plaintiff filed this action in a flawed and impermissible attempt to thwart and delay the parties' eviction-related litigation or to chill the County's legal recourse for Plaintiff's breach. Plaintiff's Complaint attempts to paint the parties' eviction litigation as something constitutionally suspect; but alas, it cannot be colored as anything other than what it is—a property dispute governed by Florida

property law. All of Plaintiff's claims can, and should, be adjudicated in the yet to be filed eviction case in state court, the appropriate forum for this dispute.

Accordingly, Plaintiff's Complaint fails to set forth a cognizable basis upon which Plaintiff can obtain relief from this Court. In its long-winded thirty-two-page Complaint, Plaintiff sets forth its version of the history of the Miami Seaquarium starting in 1954, and of Plaintiff's Lease and tenancy with the County, which commenced in 2022, and concludes with a hodge podge of federal claims and one state law claim. Plaintiff's numerous allegations provide less support for its claims and more factual bases for its objections and defenses to the County's termination of the Lease. Compl. ¶¶ 2–20 [ECF 1]. Ultimately, this case arises solely from the County's decision to terminate the Lease agreement that allowed Plaintiff to operate the Miami Seaquarium on County lands (the "property") and the clear consequences of the termination and eviction—Plaintiff's departure from the property and loss of its leasehold interest. *See* Compl. ¶¶ 20–24.

## II.   SUMMARY OF ARGUMENT

Plaintiff purports to bring six (6) causes of action, all premised on actions taken by the County—and speculative, unfounded assertions regarding actions that Plaintiff erroneously alleges the County has or has not taken—in connection with its eviction dispute. Count I alleges a violation of the Endangered Species Act ("ESA"); Count II alleges a violation of the Migratory Birds Treaty Act ("MBTA"); Count III alleges violation of the Takings Clause of the Fifth Amendment to the United States Constitution; Count IV alleges a retaliation claim in violation of the First Amendment to the United States Constitution; Count V alleges a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and Count VI alleges a breach of contract claim.

As a threshold matter, Plaintiff's action should be dismissed because there is not yet a case or controversy and the Court lacks subject matter jurisdiction. Separately, the action should still be dismissed because five (5) of Plaintiff's causes of action fail to state a claim for which relief can be granted. The first two (2) counts, based on alleged violations of federal animal protection laws, must be dismissed because Plaintiff failed to exhaust administrative proceedings before filing suit in one and lacks standing and a private right of action as to the other. The third count fails as a matter of law because the parties' dispute is based on a contract, the enforcement of which could never constitute a taking of property governed by the United States Constitution. The fourth count, a claim for First Amendment retaliation, must be dismissed because Plaintiff did not speak as a citizen on a matter of public concern. The fifth count, for Fourteenth Amendment due process violations, must be dismissed because Plaintiff's conclusory allegations fail to plead constitutionally inadequate process. Finally, as to the count for breach of contract, because it does not arise under federal question and the parties are not diverse, the Court must dismiss the claim on the failure of the previous five counts as it will no longer meet the criteria for the Court to exercise pendent or supplemental jurisdiction.

## III.     MEMORANDUM OF LAW

### A. Legal Standards for Dismissal

To state a claim for relief, a pleading must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a) (alteration added).

**Standard Applicable to Rule 12(b)(1) Motions**

"Federal courts have limited subject-matter jurisdiction, and the party invoking the court's jurisdiction bears the burden of proving it exists." *Orchid Quay, LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1302 (S.D. Fla. 2016). At any stage of the action, a party, or a court on its own initiative, can challenge subject matter jurisdiction under Rule 12(b)(1). *Arbaugh V. Y&H Corp.*, 546 U.S. 500, 506 (2006). Moreover, Rule 12(h)(3) instructs: "If the court determines at any time that it lacks subject matter jurisdiction, the court shall dismiss the action."

Article III of the Constitution requires "a case or controversy to exist at all times during the litigation." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022). A claim that is not ripe does not present a "case or controversy" within the meaning of Article III. A motion to dismiss for lack of ripeness constitutes a motion to dismiss for lack of subject matter jurisdiction under the Federal Rules of Civil Procedure because lack of ripeness constitutes a defect in subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019). The "ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

The Eleventh Circuit explained in *Stalley ex rel U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1232–33 (11thCir. 2008):

> A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. "A facial attack on the complaint requires the court to merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.

*Id.* (internal citations and quotations omitted). Because "[d]ecisions on ripeness are fact sensitive," the court may look to the factual circumstances outside of the pleadings to determine whether the court has jurisdiction. *Strickland v. Alderman,* 74 F.3d 260, 266 (11th Cir.1996). In so doing, the court must determine whether the claim is sufficiently mature, and the issues sufficiently defined and concrete for the court to render a decision. *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919, 922 (11th Cir. 2013).

**Standard Applicable to 12(b)(6) Motions**

For a complaint to withstand a Rule 12(b)(6) motion, it "must state a claim for relief that is plausible, not merely possible." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). Thereunder, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). A claim is "plausible" if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

In considering a motion to dismiss, a court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff, *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019), but may not accept conclusory allegations or legal conclusions, *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1340 (11th Cir. 2017). Once a court "identi[fies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to

5

relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678–79. When considering a Rule 12(b)(6) motion to dismiss, courts are limited to considering the complaint and attachments thereto, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

B. <u>Argument</u>

1. **Plaintiff's Complaint should be dismissed because this Court lacks jurisdiction as the claims are not ripe for the Court's review.**

A case is ripe for adjudication when the "question presented is 'fit for judicial review,' such that the controversy is entirely or substantially a question of law" and is not speculative or contingent upon facts that have not yet materialized. *Shaunnessey v. Monteris Med., Inc.,* 554 F.Supp.2d 1321, 1327–28 (M.D. Fla.2008). "A claim is not ripe for adjudication if it relies on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998). The ripeness doctrine involves not just jurisdictional but also prudential concerns. *Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir. 1984). "Even when the constitutional minimum has been met . . . prudential considerations may still counsel judicial restraint." *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 940 n. 12 (D.C.Cir.1986); *see also Johnson*, 730 F.2d at 648. Still, "timing is . . . important when it comes to Article III justiciability. File before the facts underpinning the claim have been sufficiently developed, and a court must dismiss the claim because it is not ripe for the court's review." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1374–75 (11th Cir. 2019).

Here, the Court must dismiss the Complaint because Plaintiff's claims rest entirely on contingent facts that have not yet materialized. Plaintiff alleges for example:

**What Happens if the lease is terminated?**

**If** the County precludes [Plaintiff] from entering the premises, the animals will undoubtedly suffer and will likely perish.

> **If** the County closes the Seaquarium to the public, [Plaintiff] will be unable to employ its veterinarians, staff, or maintenance workers, which in turn, will cause the animals to suffer and likely perish. (*sic*)

Compl. ¶¶ 158–60 (emphasis added). Neither eviction nor closure is pled as certainty, nor could they be.[1] Although the County issued to Plaintiff several Notice of Violation Reports, Notices of Default, and a Notice of Termination of Lease, and directed that Plaintiff vacate the property by April 21, 2024, the County has not even commenced state court eviction proceedings, much less obtained a writ of possession to eject Plaintiff from the property. *See id.* ¶¶ 110, 115, 130–31, 139. The County bears the burden of proof in its eviction action, and plaintiff has a right to contest the County's claim of entitlement; eviction is not a fait accompli. Federal courts routinely determine that claims are unripe where the existence of an injury could only arise following adjudication of rights in state court, a claim is unripe until the state courts have acted. *See e.g. Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (federal claim seeking declaration as to scope of insurance coverage is not ripe while litigation establishing existence of insurable claim is still pending in state court). Plaintiff brought this action prematurely; before the County even had a chance to enforce the termination of the Lease in an eviction action.

Moreover, an order of eviction does not mean that Plaintiff would be immediately disposed of the property, or that the County would be unwilling to provide Plaintiff time to transition its staff or animals from the property. The Complaint contains no allegations that the County will not or cannot care for any animals abandoned into its care, nor could Plaintiff plausibly make such allegations. It would be unreasonable to suggest that the County—operator of a zoo, familiar with the handling of endangered species, and able to marshal and procure specialty resources as

---

[1] Unless, of course, Plaintiff is conceding that the County is legally entitled to both.

needed—will somehow be unable to care for these animals. In the unlikely event that the County is, at some point in the future, unable to properly discharge its obligations under federal law with respect to the animals, Plaintiff can bring an action then. Until such event occurs, this action is unripe.

Plaintiff brought this action prematurely; before the County even had a chance to enforce the termination of the Lease in an eviction action. The eviction proceeding will determine whether, and under what terms and conditions, Plaintiff will depart the property and surrender the leased property to the County. The actions that follow any eviction—the timing of the writ of possession, the date of dispossession, the County's plans for care of any animals left on the property—are, as yet, unknown. Because all of Plaintiff's claims are premised, and dependent, on whether the County's obtains an eviction order, and the conditions present on the date when the County decides to execute the writ of possession, <u>none</u> of Plaintiff's claims here are ripe for this Court's adjudication. Thus, the Court must dismiss the Complaint because the Court lacks Article III standing to adjudicate the claims. *See Club Madonna, Inc.*, 924 F.3d at 1375.

> **2. The Complaint should also be dismissed because Plaintiff's allegations are founded on conjecture and speculation rather than well-pleaded facts.**

Plaintiff's claims are not just premature but based on impermissible and implausible speculation and conjecture. To support its claims, Plaintiff makes several specious, unfounded, and misleading allegations regarding the County's termination of the parties' Lease and yet to be filed suit for eviction of Plaintiff from the property. Namely, without any factual, reasonable, or logical basis, Plaintiff alleges that:

> If the County precludes [Plaintiff] from entering the premises, the animals will undoubtedly suffer and will likely perish.
> If the County closes the Seaquarium to the public, [Plaintiff] will be unable to employ (*sic*) its veterinarians, staff, or maintenance workers, which in turn, will cause the animals to suffer and likely perish.

> Abruptly closing the Seaquarium to the public is clearly dangerous and potentially fatal for the animals therein.

Compl. ¶¶ 161–162, 164. Critically, Plaintiff's federal question claims are all based on this speculative conjecture. Plaintiff does not—and certainly cannot—allege any factual circumstances that support its baseless assertion that the County's eviction will harm and "likely" kill the animals. To the contrary, the County's eviction action will include the presentation of evidence regarding Plaintiff's violation of its obligation under the Lease to maintain the Seaquarium's animals in accordance with animal welfare laws.

Plaintiff seeks to obtain relief from this Court based primarily on the unfounded, impermissibly speculative allegation; that the eviction will harm animals, without alleging any <u>facts</u> showing a causal link between the potential eviction and the potential post-eviction handling and treatment of the animals by the County. Indeed, Plaintiff's Complaint presents a litigation tactic that is at odds with the facts— knowing that the County seeks to evict Plaintiff because (among other things) Plaintiff failed to properly maintain the same animals and the buildings that shelter them in accordance with animal welfare laws and local building codes. Plaintiff asks this Court to intervene and adjudge whether *the County*, *after* evicting its tenant, will comply with federal laws specifically governing endangered species and migratory birds. Plaintiff's facts are not plausible on their face and are thus not well-pled. *See Ashcroft,* 556 U.S. at 678–79. For this reason, the Court should dismiss Plaintiff's Complaint.

### 3. Plaintiff's claims should be dismissed because they are legally insufficient.

*a)    Count I should also be dismissed because Plaintiff failed to satisfy the statutory pre-suit notice requirement for bringing a claim for violation of the Endangered Species Act (ESA).*

In Count I of the Complaint, Plaintiff attempts to allege a violation of the Endangered Species Act. Count I must also be dismissed because Plaintiff failed to comply with the statutory

9

notice requirements for citizen-suits under the ESA. "Under the ESA's citizen-suit provision, 'any person' may commence a civil suit to enjoin alleged violations of the ESA or regulations issued under its authority." *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, No. 19-cv-14199, 2020 WL 9073339, at *5 (S.D. Fla. Aug. 28, 2020) (Middlebrooks, J.) (quoting 16 U.S.C. § 1540(g)(1)). However, a person seeking to bring suit under the ESA must provide written notice of a violation of the ESA to the Secretary of the Interior or the Secretary of Commerce, and any alleged violator, at least sixty days prior to filing an action. *Id.* § 1540(g)(2)(A). Here, Plaintiff does not allege that it provided the required pre-suit notice either to the Secretary or to the County. Because Plaintiff fails to demonstrate it has standing to bring suit, Count I must be dismissed. *See Miccosukee Tribe of Indians of Fla. v. United States*, No. 04-21448-CIV, 2008 WL 2967654, at *39 (S.D. Fla. July 29, 2008) (denying ESA claim where "Plaintiff Friends' complaint is silent as to any action taken to fulfill this statutory notice requirement").

      b)      ***Count II should also be dismissed because this Court lacks jurisdiction for violation of the Migratory Bird Treaty Act ("MBTA").***

In Count II of the Complaint, Plaintiff purports to allege a violation of the MBTA. Count II of the Complaint must be dismissed because Plaintiff lacks standing to assert a claim under the MBTA. Plaintiff alleges that the County's future actions might violate the MBTA. But the fact that a statute might be violated doesn't mean that a private plaintiff can sue; not all statutes or laws provide causes of action to private parties. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1974) ("the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person".). The MBTA, for example, does not provide for enforcement by citizen suits or private actors.[2] *See Sierra Club v.*

---

[2] The County notes Plaintiff's conclusory allegation in the Complaint, that the County's "order requiring [Plaintiff] to vacate the Seaquarium violates the . . . Marine Mammal Protection Act

10

*Martin,* 110 F.3d 1551, 1554 (11th Cir. 1997) ("the MBTA does not create a private right of action."). Without a private right of action, this court is without jurisdiction to hear claims made by Plaintiff related to any violations of the Migratory Bird Treaty Act.

Accordingly, in the unlikely event that the County might someday violate the MBTA, enforcement of that statute is in the hands of the federal government, not private actors such as Plaintiff. Accordingly, Plaintiff cannot use the MBTA to enjoin the County from pursuing an action in state court. Count II should be dismissed with prejudice.

      *c)*      ***Count III should be dismissed because Plaintiff fails to state a claim for violation of the Takings Clause of the Fifth Amendment to the United States Constitution.***

In Count III, Plaintiff attempts to state a section 1983 claim for deprivation of civil rights in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. *See* 42 U.S.C. § 1983; U.S. CONST. amend V. The Takings Clause states in pertinent part "nor shall private property be taken without just compensation." Plaintiff alleges that the County's Notice directing Plaintiff to vacate the property by April 21, 2024 "unilaterally allows [the County] to take possession of [Plaintiff's] long-term leasehold and its animals—both of which [Plaintiff] invested a substantial amount of money—without compensation." (Compl. ¶ 191.) Count III should be dismissed because Plaintiff cannot establish a takings claim under these facts.

Courts have held that an unlawful taking does not arise where a party may bring a breach of contract action, such as Plaintiff has brought in Count VI of the Complaint. *See, e.g., Zoeller v. United States*, 65 Fed. Cl. 449, 461–62 (Fed. Cl. 2005) (dismissing a takings claim based on the alleged breach of a lease, because "[t]he government's breach of a contract does not effect a taking

---

(MMPA)." Compl. ¶ 190. While there are no specific claims under the Marine Mamal Protection Act, the County notes that "the MMPA [("Marine Mammal Protection Act")] does not provide for a private right of action." *Nat. Res. Def. Council, Inc. v. Evans*, 279 F. Supp .3d 1129, 1142 (N.D. Cal 2003).

11

of a private party's contractual rights if the government does not deprive the private party of its contractual rights stemming from the breach of a contract"). Indeed, "[w]here a party's rights were 'voluntarily created by contract' with a government, 'interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees*, 775 F. App'x 496, 499 (11th Cir. 2019) (quoting *Baggett Transp. Co. v. United States*, 969 F.2d 1028, 1034 (Fed. Cir. 2012); *see also Sun Oil v. United States*, 572 F.2d 786, 818 (1978) (stating that "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily . . . created by contract.... In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim."). In essence, where a property right is created by contract, the availability of breach damages are part and parcel of the property; if damages remain available, there is no taking.

Here of course, breach damages are available if the County were to somehow be found to have wrongfully terminated the contract; a breach of contract claim is included in this very lawsuit. The County has not deprived Plaintiff of pursuing any contractual remedies it has under the terms of the Lease. For this reason, Plaintiff's claim of an unlawful taking under the United States Constitution fails. Because Plaintiff cannot cure this defect, the Court should dismiss Count III with prejudice.

        ***d)***    ***Count IV should also be dismissed because Plaintiff fails to state a claim for retaliation in violation of the First Amendment to the United States Constitution***

Plaintiff seeks to bring a retaliation claim in violation of the First Amendment to the United States in Count IV of the Complaint. Plaintiff alleges that it suffered retaliation for exercising its constitutionally protected right to criticize and protest actions taken by County officials while they performed their duties. Compl. ¶¶ 196, 198. Plaintiff claims that retaliation took the form of bogus

citations and termination of its valid lease, and that would likely deter a similarly situated plaintiff from engaging in similar conduct. *Id.* ¶¶ 197, 199. Plaintiff cannot state a claim for retaliation pursuant to the First Amendment, however, because it did not engage in protected speech.

Persons who contract with the government have constitutional protection from adverse actions taken by the government in retaliation for their exercise of freedom of speech. *Bd. of County Comm'rs, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 673, (1996). That protection, however, is not absolute. *Id.* ("the First Amendment does not guarantee 'absolute freedom of speech'"). To determine the level of protection afforded by the First Amendment, the Supreme Court applies a balancing test outlined in *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563 (1968). *See Umbehr*, 518 U.S. at 673. The initial inquiry under *Pickering* is whether the contractor "spoke as a citizen on matter of public concern." *Pickering*, 391 U.S. at 568. If the answer is no, the contractor will have no First Amendment claim based on the government's response to the contractor's speech. *Id.* A lessee speaking solely regarding the terms and provisions of its lease is not speaking on a matter of public concern; it is instead speaking on a matter of its own private concerns. *See BMI Salvage Corp v. Marion*, 366 F. App'x 140, 143–144 (11th Cir. 2010) (Miami-Dade County lessee did not state First Amendment retaliation claim against County where "speech concerned its leasehold and the profitability of its business.")

In *BMI Salvage Corp*, the Eleventh Circuit ruled that the lessee of a hangar at the county airport failed to establish a First Amendment retaliation claim because he did not speak as a citizen on a matter of public concern. 366 F. App'x at 143–144. Rather, his speech amounted to complaints about airport management related to his leasehold. The Court also found that the purpose of his complaints was to air personal grievances and to promote the growth and profitability of his

13

business. For that reason, the lessee failed to state a First Amendment retaliation claim; his speech was, essentially, private rather than public.

Here, Plaintiff alleges that on December 12, 2023, it criticized the County's Chief Procurement Officer after receiving correspondence in which the Officer made false allegations about the operations of the Seaquarium. Compl. ¶¶ 104–05 Plaintiff alleges that what followed was the weaponization of the County's code enforcement officials who retaliated. *Id.* ¶ 109. Plaintiff further alleges that the Seaquarium received a Notice of Violation Report shortly thereafter outlining 40 code violations. *Id.* ¶ 110.

The allegations in the Complaint are entirely analogous to *BMI*. Like the lessee in BMI, Plaintiff spoke up as a tenant regarding inspections of its leasehold and not as a matter of public concern. Its speech was in defense of its management of its lease with the County, unrelated to issues outside its leasehold. The Court need only address the first step of the *Pickering* analysis as none of the statements made by the Plaintiff were made in any capacity other than its capacity as a tenant of the County. Just as in BMI, such speech is clearly a matter of concern for the Plaintiff as a lessee only, not a matter of public concern. The Plaintiff has not stated a First Amendment retaliation claim and Count IV of the Complaint should be dismissed.

> **e)  Count V should also be dismissed because Plaintiff fails to state a claim for violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

In Count V of the Complaint, Plaintiff purports to allege a section 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment. *See* 42 U.S.C. § 1983; U.S. CONST. amend. XIV, § 1. Plaintiff contends that the County's notice of termination of the Lease deprives it of due process. But the County cannot gain possession of the leasehold without an eviction action in Florida state court; Plaintiff's position, apparently, is that a Florida state court cannot provide it

with due process. This claim facially insults the integrity and jurisdiction of Florida state courts and the claim must be dismissed.

The Fourteenth Amendment to the U.S. Constitution provides that no State "shall . . . deprive any person of life, liberty or property without due process of law." *Id.* The concept of due process is "straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Essentially, procedural due process requires "notice and an opportunity to be heard." *Id.* at 546; *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citations omitted).

Notice must merely be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Arrington v. Helms*, 438 F.3d 1336, 1349–50 (11th Cir. 2006) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Due Process Clause does not require a specific form of notice; rather, as due process is a "flexible concept," "myriad forms of notice may satisfy the *Mullane* standard." *Id.*; *see also Gaines v. Hadi*, No. 06-60129-CIV, 2006 WL 6035742, at *13 (S.D. Fla. Jan. 30, 2006) (noting that "reasonableness is the touchstone of the notice requirement, and the particular circumstances dictate whether the notice is reasonable"). Further, the Due Process Clause does not reward a plaintiff with a section 1983 claim where the plaintiff ignores the notice that is provided. As one court has explained, a defendant "cannot ignore the process duly extended to him and later complain that he was not accorded due process." *Galloway v. State of La.*, 817 F.2d 1154, 1159 (5th Cir. 1987).

Here, Plaintiff is afforded process: it is entitled to a literal day in court prior to being dispossessed of its property, since the County cannot dispossess Plaintiff without filing an action

for eviction in state court. Moreover, the existence of this state court process fulfills the requirements of due process. *McShane v. Agents of Int'l Monetary Fund*, No. 3:21-CV-1396, 2022 WL 601048, at *1 (M.D. Pa. Jan. 3, 2022) ("Since . . . plaintiff has adequate available state court remedies to challenge the Tax Sale of his property, the Writ of Possession, and the Sheriff's Notice of his eviction, by filing appeals, he fails to state due process claims"); *Ferguson v. Adkins*, No. C2-01-195, 2002 WL 484704, at *3 (S.D. Ohio Mar. 4, 2002) (availability of state court remedies provides due process in eviction action); *Samara v. King's Remodeling*, No.16-cv-0513, 2016 WL 1223263 (N.D. Ohio 2016) (Eviction defendant "could have raised [defenses] in her eviction action, in her Petition for a Writ of Prohibition, and on appeal to the Ohio Court of Appeals and the Ohio Supreme Court. . . . She was not denied due process."). Simply put, "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987); *see also, Wells v. Columbus Technical Coll.*, 510 F. App'x 893, 897 (11th Cir. 2013) ("So long as the state court has the power to remedy any procedural alleged deficiency, Mr. Wells was not deprived of due process."). As Florida law requires that the County proceed with an eviction action prior to taking back the property, Plaintiff states no claim for lack of process. Accordingly, this claim must be dismissed, with prejudice.

      **f)** ***Count VI should also be dismissed because the Court no longer has a basis to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim.***

Plaintiff alleges a breach of the Lease in Count VI of the Complaint. Ordinarily, Plaintiff could not bring its breach of contract claim in federal court because the parties to this action do not have diverse citizenship. Nonetheless, if Plaintiff's federal claims were not defective, the Court could exercise supplemental jurisdiction over Plaintiff's breach of contract claim because it arises

out of a common nucleus of operative fact with the federal law claims Plaintiff attempted to raise in the preceding five counts in the Complaint. However, when Plaintiff's federal claims are dismissed, the remaining state claim does not confer jurisdiction on this Court. It is well established that when "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966); *Silas v. Sheriff of Broward Cnty., Fla.*, 55 F. 4th 863, 865 (11th Cir. 2022); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). Because all of Plaintiff's federal law claims are neither ripe nor legally sufficient and should be dismissed, this Court should likewise dismiss Plaintiff's state law claim.

4. **Plaintiff's Complaint should also be dismissed because it fails to state a claim for, and impermissibly seeks, injunctive relief.**

Plaintiff seeks injunctive relief for each of the first five (5) counts in the Complaint. For example, Plaintiff seeks a temporary restraining order precluding the County from gaining possession of the property, enjoining the County from closing the Se aquarium, precluding the County from "taking" endangered or threatened species pursuant to the ESA and the MBTA, and enjoining the County from ejecting Plaintiff from the property. Plaintiff, however, fails to plead facts to support its claim for injunctive relief. Nonetheless, the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, prohibits Plaintiff from seeking injunctive relief in federal court. For these reasons, Plaintiff may not establish any of its federal claims and thus the Complaint should be dismissed on these grounds.

### a) Plaintiff fails to state a claim for injunctive relief.

A "preliminary injunction is an extraordinary remedy [and is] never awarded as of right" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (the grant of a preliminary injunction "is the exception rather than the rule"). Plaintiffs seeking temporary or preliminary injunctions bear a "heavy burden." *Hardin v. Hous. Chronicle Pub. Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978). To obtain a temporary restraining order, Plaintiff must "establish four separate requirements—namely, that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant[s] outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020). Here, though Plaintiff purports to allege facts in support its federal claims, none of the facts Plaintiff alleges support any of the four requirements for obtaining a temporary injunction. For this reason alone, Plaintiff's claim for injunctive relief is deficient.

### b) *Plaintiff seeks injunctive relief in contravention of the Anti-Injunction Act.*

Ultimately, Plaintiff's request for this Court to enjoin the County from seeking eviction is barred by the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283. The AIA states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id*. No such exemption applies in this case. First, neither the ESA nor the MBTA expressly authorizes a federal court to enjoin a state court. Second, Plaintiff is not able to point to a federal judgment in need of protection.

Thus, the AIA bars this Court from granting Plaintiff the injunctive relief it seeks. *See Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 286 (1970) (The Anti–Injunction Act serves as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the Act's] three specifically defined exceptions."); *In re Fundamental Long Term Care*, 873 F.3d 1325, 1336 (11th Cir. 2017) (The Anti-Injunction Act exceptions "are narrow and are not [to] be enlarged by loose statutory construction…. [a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed.") (citations omitted). Plaintiff may not use this Court to prevent a state court from hearing and ruling on any eviction action filed by the County. Because Plaintiff seeks relief which would violate the Ant-Injunction Act, the Court should dismiss the Complaint.

[INTENTIONALLY LEFT BLANK]

## CONCLUSION

For each of the forgoing reasons and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court should dismiss the Complaint in its entirety.

Respectfully submitted,

        GERALDINE BONZON-KEENAN
        Miami-Dade County Attorney

        By: /s/ Tricia-Gaye Cotterell
            Melanie J. Spencer (Fla. Bar No. 111786)
            Assistant County Attorney
            Tricia-Gaye Cotterell (Fla. Bar No. 124331)
            Assistant County Attorney
            Brianna E. Donet Fla. Bar No. 1018530
            Assistant County Attorney
            Stephen P. Clark Center
            111 N.W. First Street, Suite 2810
            Miami, Florida 33128-1993
            Tel: 305-375-5151
            Fax: 305-375-4791
            Email: Melanie.Spencer@miamidade.gov
            Email: yohana.ramos@miamidade.gov
            Email: Tricia-Gaye.Cotterell@miamidade.gov
            Email: katherine.sanchez@miamidade.gov
            Email: Brianna.Donet.@ miamidade.gov
            Email: yohana.ramos@miamidade.gov

## CERTIFICATE OF SERVICE

I hereby that a true and correct copy of the foregoing was served via e-mail this 9th day of May 2024 to:

        Hilton Napoleon, II, P.A.
        Hilton Napoleon, II, Esq., FBN 17593
        237 South Dixie Hwy., 4th Floor
        Coral Gables, Florida 33133
        Telephone: 305-510-7106
        hilton@napoleonfirm.com
        hiltonnapoleoniipa@gmail.com
        Counsel for Defendant

            /s/ Tricia-Gaye Cotterell
            Assistant County Attorney